WO        IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| CAYENNE MEDICAL, INC., | ) |
|         Plaintiff, | ) |
| vs. | ) |
| MEDSHAPE, INC., a Georgia corporation, KURT JACOBUS, KEN GALL, TIMOTHY NASH, AND JOSHUA RAY, | ) |
|         Defendants. | ) No. 2:14-cv-0451-HRH |

O R D E R

Defendants Jacobus' and Gall's Motion to Dismiss

Defendants Kurt Jacobus and Ken Gall move to dismiss Cayenne's claims against them.[1] This motion is opposed.[2] Oral argument was requested and has been heard.

Background

Plaintiff is Cayenne Medical, Inc. Defendants are MedShape, Inc., Kurt Jacobus, Ken Gall, Timothy Nash, and Joshua Ray. The instant motion only involves defendants Jacobus and Gall.

---

[1] Docket No. 92.

[2] Docket Nos. 110 & 115.

Jacobus is the President, Chairman, and Chief Executive Officer of MedShape.[3] Gall is the Chief Technology Officer of MedShape.[4] Jacobus and Gall are alleged to be residents of Georgia.[5]

Cayenne and MedShape market and sell competing medical devices. Cayenne's device is the AperFix Femoral System. Medshape's competing device is the ExoShape Femoral.[6]

On March 6, 2014, Cayenne commenced this action against MedShape, alleging that MedShape's ExoShape Femoral device infringed two of Cayenne's patents. On January 27, 2015, Cayenne filed an amended complaint which named Jacobus and Gall as defendants. Cayenne asserts the following claims against Jacobus and Gall in its amended complaint: 1) misappropriation of trade secrets, 2) intentional interference with contract, 3) intentional interference with business expectancy, 4) unfair competition, 5) aiding and abetting, and 6) civil conspiracy.

Cayenne's misappropriation of trade secrets claims against Jacobus and Gall are based on allegations that Jacobus and Gall were involved in the hiring of two former

---

[3]First Amended Complaint at 4, ¶ 13, Docket No. 86.

[4]Id. at ¶ 14.

[5]Id. at ¶¶ 13-14.

[6]MedShape also markets a device called the ExoShape Tibial, but that is not alleged to be a competing device in Cayenne's First Amended Complaint.

Cayenne employees who disclosed Cayenne's confidential information to MedShape, Jacobus, and Gall.[7] Cayenne's intentional interference with contract claims against Jacobus and Gall are based on allegations that they knew that Cayenne had contracts with "Matrix Biosurgical, Integra Medikal, EHRM Orthopedics, Dr. Uribe, AMG Medical Distributor, Inc./Ramiro Parra" and that they "cause[d] these parties to breach their agreements with Cayenne[.]"[8]  Plaintiff's intentional interference with business expectancies claims against Jacobus and Gall are based on allegations that they knew that "Cayenne had business expectancies with Matrix Biosurgical, Integra Medikal, EHRM Orthopedics, Dr. Uribe, AMG Medical Distributor, Inc./Ramiro Parra" and that they "cause[d] these parties to breach their expectancies with Cayenne[.]"[9]  Cayenne's unfair competition claims against Jacobus and Gall are based on allegations that they "unfairly competed with Cayenne through their tortious interference with Cayenne's valid contractual relationships and business expectancies" and that they "unfairly competed against Cayenne by misappropriating Cayenne's Confidential Information[.]"[10]  Cayenne's aiding and abetting claims against Jacobus and Gall are based on allegations that they "substantially assisted and

---

[7] First Amended Complaint at 24, ¶ 130, Docket No. 86.

[8] Id. at 25-26, ¶¶ 137 & 139.

[9] Id. at 27, ¶¶ 145-146.

[10] Id. at 28, ¶¶ 152 & 154.

encouraged each of the other named Defendants in the achievement of the tortious conduct directed against Cayenne."[11] Cayenne's civil conspiracy claims against Jacobus and Gall are based on allegations that they agreed with at least one other defendant to accomplish tortious conduct.[12]

Jacobus and Gall now move to dismiss Cayenne's claims against them on the grounds that the court lacks personal jurisdiction over them. In the alternative, Jacobus and Gall request that Cayenne's action against them be transferred to the Northern District of Georgia.

## Discussion

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004). "Where, as here, the motion is based on written materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts.'" Id. (quoting Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990)). "In such cases," the court "only inquire[s] into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction.'" Id. (quoting Caruth v. Int'l Psychoanalytical Ass'n, 59 F.3d 126, 128

---

[11] Id. at 29, ¶ 161.

[12] Id. at 29-30, ¶ 166.

(9th Cir. 1995)). "Although the plaintiff cannot simply rest on the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true." Id. (quoting Amba Marketing Systems, Inc. v. Jobar Int'l, 551 F.2d 784, 787 (9th Cir. 1977)).

The issue here is whether the court has specific personal jurisdiction over Jacobus and Gall.

> This court uses the following three-part test to analyze whether a party's "minimum contacts" meet the due process standard for the exercise of specific personal jurisdiction:
>
>> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

In re W. States Wholesale Natural Gas Antitrust Litig., 715 F.3d 716, 741-42 (9th Cir. 2013) (citation omitted). The parties' arguments focus on the first prong of the test.

"In tort cases, [the court] typically inquire[s] whether a defendant 'purposefully direct[s] his activities' at the forum state, applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d

1199, 1206 (9th Cir. 2006) (quoting Schwarzenegger, 374 F.3d at 803). But, "mere injury to a forum resident is not a sufficient connection to the forum." Walden v. Fiore, 134 S. Ct. 1115, 1125 (2014). "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." Id. "[T]he defendant's suit-related conduct must create a substantial connection with the forum State." Id. at 1121. The "relationship must arise out of contacts that 'the defendant himself' creates with the forum[.]" Id. at 1122 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)). The court looks to "the defendant's contacts with the forum itself, not with persons residing there." Id.

In its amended complaint, Cayenne alleges generally that the court has personal jurisdiction over Jacobus and Gall because they "intentionally solicited and encouraged MedShape's employees to disclose confidential information of Cayenne, an Arizona company, to gain a business advantage over Cayenne[;]" they "interfered with Cayenne's contracts with employees, distributors, and surgeons[,]", and they "directed tortious activities to the forum state by committing intentional acts expressly aimed at a business residing in the forum state knowing that the act will likely cause harm in the forum state."[13] These allegations, however, relate to Cayenne's forum presence and not to Jacobus' and Gall's connections to Arizona.

---

[13] First Amended Complaint at 2, ¶¶ 6-7, Docket No. 86.

Cayenne also makes claim-specific allegations in an attempt to show that Jacobus' and Gall's conduct connected them to Arizona in a meaningful way. Cayenne alleges that Jacobus and Gall intentionally interfered with contracts and business expectancies. But none of the entities and individuals mentioned in Cayenne's First Amended Complaint were Arizona residents. Rather, "Integra Medikal is located in Turkey[,]" "ERHM Orthopedics is located in Tampa, Florida[,]" Dr. Uribe "resides in Coral Gables, Florida[,]" "AMG Medical Distributor, Inc. is located in Weston, Florida[,]" "Ramiro Parra resides in Weston, Florida[,]" and "Matrix Biosurgical is located in Inland Empire, California."[14] Thus, any conduct by Jacobus and Gall in connection with these individuals or entities was not directed at Arizona.

As for Cayenne's misappropriation and unfair competition causes of action, these claims are based on allegations that former Cayenne employees improperly disclosed confidential information to Gall and Jacobus. The four former Cayenne employees are Joshua Ray, Lindsey Wolf, Erica Burk, and Timothy Nash. Ray was a Texas resident while employed by Cayenne, Wolf a Florida resident, and Burk a California resident.[15] Thus, any alleged tortious conduct in connection with these three former Cayenne employees would

---

[14]Declaration of J. Kurt Jacobus at 2-3, ¶¶ 13-18, which is appended to Defendants J. Kurt Jacobus' and Kenneth A. Gall's Motion to Dismiss Pursuant to Rule 12(b)(2), Docket No. 92.

[15]Id. at 2, ¶¶ 9-11.

not have any nexus with Arizona, but may have had an effect in Arizona solely because that is where Cayenne happens to have its principal place of business.

Nash, however, was at one point in time a resident of Arizona and Cayenne argues that Gall's and Jacobus's interference with Cayenne's contractual relationship and business expectancy with Nash is sufficient to establish personal jurisdiction. Nash worked for Cayenne until April 2012 and began working for MedShape in April 2013, after he moved to Georgia in December 2012.[16] Cayenne points out that Gall testified that Nash's employment agreement with MedShape listed Nash as being an Arizona resident;[17] that Nash's resume showed that he worked for an Arizona company,[18] and that MedShape's offer letter of December 12, 2012 was sent to Nash in Arizona.[19] Nash accepted MedShape's offer on December 13, 2012, presumably signing the acceptance in Arizona.[20] The at-will employment agreement that Nash signed that day provided that "[a]ll notices, requests,

---

[16] Declaration of Timothy Nash at 1, ¶¶ 2-3, which is appended to Defendants Timothy Nash's and Josh Ray's Motion to Dismiss, Docket No. 93.

[17] 30(b)(6) Video Deposition of MedShape (Ken Gall) at 204:17-24, Exhibit A, SEALED Cayenne Medical, Inc.'s Response to Defendants J. Kurt Jacobus' and Kenneth A. Gall's Motion to Dismiss, Docket No. 115.

[18] Exhibit 97, SEALED Cayenne Medical, Inc.'s Response to Defendants J. Kurt Jacobus' and Kenneth A. Gall's Motion to Dismiss, Docket No. 115.

[19] Exhibit 98, Redacted Version Cayenne Medical, Inc.'s Response to Defendants J. Kurt Jacobus' and Kenneth A. Gall's Motion to Dismiss, Docket No. 110.

[20] Id. at 2.

demands and other communications required or permitted hereunder" should be sent to Nash in Arizona.[21]

Cayenne further contends that Gall and Jacobus intentionally induced Nash to directly or indirectly participate in the business of MedShape in violation of his noncompete agreement with Cayenne while Nash was still in Arizona. For example, Cayenne points out that Gall testified about a conversation he had with Nash in November 2012 regarding Cayenne's medical device.[22] Cayenne also contends that in January 2013, Nash coordinated and participated in a meeting with a company called Linvatec but there is nothing to indicate that this meeting happened in Arizona.[23] Cayenne also points out that in January 2013, Nash helped MedShape with discussions with a company called Mitek regarding MedShape's sports medicine products.[24] Cayenne further points out that in February 2013, Gall and Jacobus instructed a MedShape engineer to work with Nash in

---

[21]Exhibit 99 at MS 17991, Redacted Version Cayenne Medical, Inc.'s Response to Defendants J. Kurt Jacobus' and Kenneth A. Gall's Motion to Dismiss, Docket No. 110.

[22]Gall Deposition at 205:14-206:11, Exhibit A, SEALED Cayenne Medical, Inc.'s Response to Defendants J. Kurt Jacobus' and Kenneth A. Gall's Motion to Dismiss, Docket No. 115.

[23]Exhibit 102, SEALED Cayenne Medical, Inc.'s Response to Defendants J. Kurt Jacobus' and Kenneth A. Gall's Motion to Dismiss, Docket No. 115.

[24]Gall Deposition at 221:21-222:14, Exhibit A, SEALED Cayenne Medical, Inc.'s Response to Defendants J. Kurt Jacobus' and Kenneth A. Gall's Motion to Dismiss, Docket No. 115.

getting a supplier to make an ACL set.[25]  Also in February 2013, Nash, Gall, and Jacobus exchanged emails prior to a meeting with Linvatec and it appears that Nash was in Arizona when the emails were being exchanged.[26]  Cayenne also contends that Jacobus and Gall touted the hiring of Nash to Matt Keene, an Arizona resident and MedShape investor.[27]

Cayenne argues that by contacting and hiring Nash while he was living in Arizona, Gall and Jacobus have created contacts with Arizona such that it would be reasonable for this court to exercise personal jurisdiction over them.  Cayenne argues that this is "suit-related" conduct that connects Gall and Jacobus to Arizona in a meaningful way because Cayenne had no involvement in Gall and Jacobus contacting Nash regarding potential employment while Nash was residing in Arizona.

Cayenne's argument regarding Nash is unavailing.  Jacobus' and Gall's contacts with Nash while he was still living in Arizona were not suit-related.  Their contact with Nash had no nexus to the alleged tortious conduct that is the subject of Cayenne's First Amended Complaint because Cayenne has not alleged that these isolated communications were in anyway improper.  Gall and Jacobus were entitled to attempt to recruit Nash and

---

[25]Exhibits 104-105, SEALED Cayenne Medical, Inc.'s Response to Defendants J. Kurt Jacobus' and Kenneth A. Gall's Motion to Dismiss, Docket No. 115.

[26]Exhibit D, SEALED Cayenne Medical, Inc.'s Response to Defendants J. Kurt Jacobus' and Kenneth A. Gall's Motion to Dismiss, Docket No. 115.

[27]Exhibit 103, SEALED Cayenne Medical, Inc.'s Response to Defendants J. Kurt Jacobus' and Kenneth A. Gall's Motion to Dismiss, Docket No. 115.

he was entitled to go to work for a competitor one year after he left Cayenne. There is no evidence that Gall and Jacobus were talking to Nash while he was still employed by Cayenne. If Gall and Jacobus got confidential information from Nash, it presumably would have been after Nash left Arizona. Gall's and Jacobus' reaching out to Nash in Arizona in order to recruit him is not sufficient contact with Arizona for personal jurisdiction purposes. Rather, this contact was with someone who happened to live in Arizona, as opposed to contact with "the forum State itself[.]" Walden, 134 S. Ct. at 1122. Personal jurisdiction over Gall and Jacobus cannot be based on their contact with Nash while he was living in Arizona after leaving his employment with Cayenne.

Cayenne next argues that the court has personal jurisdiction over Gall and Jacobus because of contact they had with other individuals in Arizona. One of those individuals was Christine Tang, a Medshape sales representative located in Phoenix. For example, Cayenne points to an email from Gall to Tang and others, on which Jacobus was cc'd, concerning a Nevada cadaver lab in which he instructed Tang and the other sales representatives as to what equipment to bring and instructed Tang to cover two Arizona-based surgeons who were going to attend the lab.[28] Cayenne also contends that the surgeon who implanted the ExoShape femoral device at the Phoenix cadaver lab was an Arizona-based surgeon, Dr. Padley. Cayenne also provides evidence that Gall met with

---

[28]Exhibit 71, SEALED Cayenne Medical, Inc.'s Response to Kurt Jacobus' and Kenneth A. Gall's Motion to Dismiss, Docket No. 115.

a Dr. Chhabra in Phoenix to discuss his working with MedShape on the femoral device.[29] Cayenne argues that these contacts had nothing to do with Cayenne's presence in Arizona, but rather were Gall and Jacobus making direct, independent contact with Arizona. Cayenne argues that the fact that these contacts did not involve tortious activity does not matter because "[i]n any personal jurisdiction case we must evaluate all of a defendant's contacts with the forum state, whether or not those contacts involve wrongful activity by the defendant." Yahoo! Inc., 433 F.3d at 1207.

But Walden directs the court to evaluate the defendant's suit-related contacts. It is "the defendant's suit-related conduct [that] must create a substantial connection with the forum State." Walden, 134 S. Ct. at 1121. Gall's and Jacobus' contacts with Tang and the other individuals mentioned above had nothing to do with Cayenne's allegations against them. These contacts were not suit-related.

Along the same lines, Cayenne argues that the court has personal jurisdiction over Gall and Jacobus because they had numerous contacts with Arizona investors. Cayenne argues that this is suit-related conduct because Gall and Jacobus were keeping the Arizona investors apprised of MedShape's business, including providing information about MedShape's ExoShape Femoral product. Cayenne argues that Jacobus and Gall were

---

[29]Exhibit 94, SEALED Cayenne Medical, Inc.'s Response to Kurt Jacobus' and Kenneth A. Gall's Motion to Dismiss, Docket No. 115.

reaching out beyond Georgia to Arizona to seek investors for Medshape and that these contacts are sufficient for purposes of personal jurisdiction.

But again, this was not suit-related conduct. This conduct has nothing to do with the claims Cayenne is making against Jacobus and Gall because it is not the tortious conduct that Cayenne is alleging Jacobus and Gall engaged in.

Cayenne next argues that the court has personal jurisdiction over Gall and Jacobus because the contracts that they interfered with had Arizona choice of law provisions. For example, Cayenne has alleged that Gall and Jacobus used confidential information that it received from Cayenne's former employee Ray.[30] Ray's contract with Cayenne contained an Arizona choice of law provision and a provision in which Ray consented to personal jurisdiction in Arizona.[31] As another example, Cayenne's contract with AMG Medical Distributor contained an Arizona choice of law provision and a consent to personal jurisdiction in Arizona.[32] Cayenne argues that a breach of any of these contracts would implicate Arizona because the agreements are governed by Arizona law. Thus, Cayenne

---

[30]First Amended Complaint at 24, ¶ 131, Docket No. 86.

[31]Employment, Confidential Information, and Invention Assignment Agreement at 4, § 10(a), Exhibit K, First Amended Complaint, Docket No. 86.

[32]Sales Representative Agreement at 15, § 14.1, Exhibit F, SEALED Cayenne Medical, Inc.'s Response to Defendants J. Kurt Jacobus' and Kenneth A. Gall's Motion to Dismiss, Docket No. 115.

argues that its intentional interference with contract claims against Jacobus and Gall are inextricably tied to Arizona and its laws.

As Gall and Jacobus are quick to point out, Cayenne has cited to no authority that stands for the proposition that the presence of a choice of law provision in a contract that has allegedly been interfered with somehow establishes personal jurisdiction over a defendant in the chosen forum. Cayenne's choice of law argument is meritless.

Finally, Cayenne makes an argument that the court has personal jurisdiction over Gall and Jacobus because they engaged in wrongful conduct targeted at Cayenne which they knew was a resident of Arizona. There are district courts in the Ninth Circuit that have decided that even post-Walden, "the 'express aiming' requirement of the effects test remains 'satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state.'" Leibman v. Prupes, No. 2:14 CV 09003 CAS (VBKx), 2015 WL 898454, at *9 (C.D. Cal. Mar. 2, 2015) (quoting Dole Food Co. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002)). In other words, these courts are basing personal jurisdiction on the plaintiff's presence in the forum state, rather than on the defendant's contacts with the forum state. Under this "effects test", Cayenne argues that it is sufficient that Jacobus and Gall knew that Nash resided in Arizona when they communicated with him regarding future employment; that they knew former employees and distributors had contracts with Cayenne, an Arizona company; and

that they knew the confidential information they were getting from former Cayenne employees came from Cayenne, which was located in Arizona.

This court will not ignore <u>Walden</u> nor is this case distinguishable from <u>Walden</u>. <u>Walden</u> requires the court to look at the suit-related conduct of the defendant in determining whether there is personal jurisdiction. In the context of Cayenne's claims against them, Jacobus and Gall did nothing of substance in Arizona. It is simply not sufficient for personal jurisdiction that the effects of their alleged tortious activity was felt by Cayenne in Arizona. Because Jacobus and Gall did not create any significant connection with Arizona, the court lacks personal jurisdiction over them.

## Conclusion

Jacobus' and Gall's motion to dismiss[33] is granted. Cayenne's claims against Jacobus and Gall are dismissed without prejudice.

DATED at Anchorage, Alaska, this 15th day of September, 2015.

/s/ H. Russel Holland  
United States District Judge

---

[33]Docket No. 92.