WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| CAYENNE MEDICAL, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| MEDSHAPE, INC., a Georgia corporation, ) | |
| KURT JACOBUS, KEN GALL, TIMOTHY ) | |
| NASH, and JOSHUA RAY, ) | |
| ) | No. 2:14-cv-0451-HRH |
| Defendants. ) | |
| _____) | |

O R D E R

Defendants Nash's and Ray's Motion to Dismiss

Defendants Timothy Nash and Joshua Ray move to dismiss Cayenne's claims against them and to compel arbitration of these claims.[1] This motion is opposed.[2] Oral argument was requested and has been heard.

---

[1]Docket No. 93.

[2]Docket No. 109.

-1-

Background

Defendants Timothy Nash and Joshua Ray are former employees of plaintiff Cayenne Medical, Inc. After leaving Cayenne's employ, both Nash and Ray went to work for one of Cayenne's competitors, defendant MedShape, Inc.

On March 6, 2014, Cayenne commenced this action against MedShape, alleging that one of MedShape's medical devices infringed two of Cayenne's patents. On January 27, 2015, Cayenne filed an amended complaint which named Nash and Ray as defendants. Cayenne asserts the following claims against Nash and Ray in its amended complaint: 1) misappropriation of trade secrets, 2) intentional interference with contract, 3) intentional interference with business expectancy, 4) unfair competition, 5) aiding and abetting, 6) civil conspiracy, 7) breach of contract, and 8) breach of the covenant of good faith and fair dealing.

Cayenne's misappropriation of trade secrets claims against Nash and Ray are based on allegations that Nash and Ray acquired confidential information while working for Cayenne and that they then shared this information with defendants MedShape, Kurt Jacobus, and Ken Gall.[3] Cayenne's intentional interference with contract claims against Nash and Ray are based on allegations that Nash and Ray knew that Cayenne had contracts with "Matrix Biosurgical, Integra Medikal, EHRM Orthopedics, Dr. Uribe, AMG

---

[3]Jacobus and Gall are officers of MedShape. First Amended Complaint at 4, ¶¶ 13-14, Docket No. 86.

Medical Distributor, Inc./Ramiro Parra" and that Nash and Ray "cause[d] these parties to breach their agreements with Cayenne[.]"[4] Cayenne's intentional interference with business expectancies claims against Nash and Ray are based on allegations that Nash and Ray knew that Cayenne had business expectancies with "Matrix Biosurgical, Integra Medikal, EHRM Orthopedics, Dr. Uribe, AMG Medical Distributor, Inc./Ramiro Parra" and that Nash and Ray "cause[d] these parties to breach their expectancies with Cayenne[.]"[5] Cayenne's unfair competition claims against Nash and Ray are based on allegations that they "unfairly competed with Cayenne through their tortious interference with Cayenne's valid contractual relationships and business expectancies" and that they "unfairly competed against Cayenne by misappropriating Cayenne's Confidential Information[.]"[6] Cayenne's aiding and abetting claims against Nash and Ray are based on allegations that they "substantially assisted and encouraged each of the other named Defendants in the achievement of the tortious conduct directed against Cayenne."[7] Cayenne's civil conspiracy claims against Nash and Ray are based on allegations that they agreed with at

---

[4]Id. at 25-26, ¶¶ 137 & 139.

[5]Id. at 27, ¶¶ 145-146.

[6]Id. at 28, ¶¶ 152 & 154.

[7]Id. at 29, ¶ 161.

least one other defendant to accomplish tortious conduct.[8]  Cayenne's breach of contract claims against Nash and Ray are based on allegations that they breached confidentiality agreements and non-compete agreements that they had with Cayenne.[9]  And, Cayenne's breach of the covenant of good faith and fair dealing claims against Nash and Ray are based on allegations that their "actions in disclosing confidential information and Mr. Nash's action in violating the terms of the non-competition clauses of the Agreements are inconsistent with Cayenne's justifiable expectations under the Agreements."[10]

Nash and Ray now move to dismiss Cayenne's claims against them and to compel arbitration of these claims.

## Discussion

The Federal Arbitration Act "provides that any arbitration agreement within its scope 'shall be valid, irrevocable, and enforceable' and permits a party 'aggrieved by the alleged ... refusal of another to arbitrate' to petition any federal district court for an order compelling arbitration in the manner provided for in the agreement."  Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting 9 U.S.C. §§ 2, 4).  "By its terms, the Act 'leaves no place for the exercise of discretion by a district court, but

---

[8]Id. at 29-30, ¶ 166.

[9]Id. at 30, ¶¶ 170-174.

[10]Id. at 31, ¶ 180.

instead mandates that district courts <u>shall</u> direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" Id. (quoting <u>Dean Witter Reynolds Inc. v. Byrd</u>, 470 U.S. 213, 218 (1985)). Generally, "[t]he court's role under the Act is ... limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." Id. "[T]here is a presumption that courts will decide which issues are arbitrable[.]" <u>Oracle America, Inc. v. Myriad Group A.G.</u>, 724 F.3d 1069, 1072 (9th Cir. 2013). However, "incorporation of ... arbitration rules is clear and unmistakable evidence that the parties agreed the arbitrator would decide arbitrability." Id. at 1074–75.

<u>Nash</u>

Nash's 2008 amended and restated employment agreement contained an arbitration clause that provided that "[a]ny controversy, dispute or claim between Executive and the Company ... shall be resolved by binding arbitration, at the request of either party."[11] The 2008 amended and restated employment agreement further provided that

> [t]he claims which are to be arbitrated include, but are not limited to any Claim arising out of or relating to this Agreement or the employment relationship between Executive and the Company, claims for wages and other compensation, claims for breach of contract (express or implied), claims for

---

[11] Amended and Restated Employment Agreement at 9, § 7.1, Exhibit F, First Amended Complaint, Docket No. 86.

>violation of public policy, wrongful termination, [and] tort claims[.[12]]

Nash's 2012 Separation Agreement contained a similar arbitration clause.[13] The 2012 Separation Agreement arbitration clause provided that "[a]ny controversy, dispute or claim between Nash and Cayenne, whether as to validity, construction, capacity, performance, or otherwise, shall be resolved by binding arbitration, at the request of either party."[14] The 2012 Separation Agreement arbitration clause further provided that

>[t]he claims which are to be arbitrated include, but are not limited to any Claim arising out of or relating to this Agreement or the employment relationship between Nash and Cayenne, claims for wages and other compensation, claims for breach of contract (express or implied), claims for violation of public policy, wrongful termination, [and] tort claims[.[15]]

Cayenne does not dispute that its breach of contract, breach of the covenant of good faith and fair dealing, and misappropriation of trade secret claims against Nash are subject to arbitration. But, Cayenne argues that its intentional interference with contract, intentional interference with business expectancy, unfair competition, aiding and abetting,

---

[12] Id.

[13] The 2012 Separation Agreement provides that it "supersedes any and all prior and contemporaneous agreements, promises, representations, negotiations, and understandings of the parties[.]" Employment Separation Agreement at 11, § XX, Exhibit I, First Amended Complaint, Docket No. 86.

[14] Id. at 7, § X.A.

[15] Id. at 8.

and civil conspiracy claims (the tort claims) against Nash do not fall within the scope of the arbitration clauses. For example, Cayenne contends that its intentional inference with contract claim is based on allegations that Nash caused third-party distributors to breach their contracts with Cayenne and plaintiff contends that this interference was unrelated to Nash's employment relationship with Cayenne. Cayenne points out that this same conduct is alleged against defendants Jacobus and Gall, who did not have an employment relationship with Cayenne. Thus, Cayenne argues that this could not be a claim "arising out of or relating to" Nash's employment agreement.

It is irrelevant whether Cayenne's claims against Nash arose out of or relate to his employment agreement. The arbitration clauses in Nash's 2008 amended employment agreement and in his 2012 Separation Agreement do not limit arbitrable claims to those "arising out of or related to" Nash's employment agreement. Rather, the arbitration clauses provided that <u>any</u> controversy, dispute or claim between Nash and Cayenne shall be resolved by binding arbitration. While the arbitration clauses provided that claims arising out of or related to the employment agreement or separation agreement are subject to arbitration, the clauses also provided that these are not the only claims subject to arbitration. In fact, the arbitration clauses expressly provided that tort claims are subject to arbitration. Thus, all of Cayenne's claims against Nash, including its tort claims, fall within the scope of the arbitration clauses in Nash's agreements.

<u>Ray</u>

Ray's 2008 employment agreement provided that

> [e]xcept as provided in subsection (b) below, I agree that any dispute, claim or controversy concerning my employment or the termination of my employment or any dispute, claim or controversy arising out of or relating to the interpretation, construction, performance or breach of this Agreement, shall be settled by arbitration to be held in Maricopa County, Arizona in accordance with the rules then in effect of the American Arbitration Association.[16]

Ray argues that all of Cayenne's claims against him arise out of or are related to his employment agreement and thus are subject to arbitration.

Cayenne argues that none of its claims against Ray are subject to arbitration because only Ray agreed to arbitration. Cayenne contends that it did not agree to arbitrate its claims against Ray. Cayenne contends that it only agreed to the covenants provided in Section 2(a)(i) of Ray's contract, which does not include an agreement to submit its claims against Ray to arbitration. The signature block of Ray's employment agreement provides "that the Company executed this Agreement solely for the purpose of entering into the covenants contained in Section 2(a)(i)."[17] Section 2(a)(i) provides, in pertinent part, that

> [t]he Company agrees that upon the commencement of my employment, it will make available to me that Confidential

---

[16] Employment, Confidential Information, and Invention Assignment Agreement at 3, § 9(a), Exhibit K, First Amended Complaint, Docket No. 86.

[17] <u>Id.</u> at 5.

> Information of the Company that will enable me to optimize the performance of my duties to the Company. In exchange, I agree to use such Confidential Information solely for the Company's benefit.[18]

In addition, in the introduction to the Agreement, Ray agreed that

> [a]s a condition of my employment with Cayenne Medical, Inc., ..., and in consideration of my further employment with the Company and my receipt of compensation now and hereafter paid to me by the Company and the Company's agreement in Section 2(a)(i), I agree to the following terms and conditions of this Employment, Confidential Information and Invention Agreement....[19]

Cayenne argues that this introduction defines the bargain reached between the parties, which was that Ray agreed to the covenants listed in the Agreement, while Cayenne agreed to compensate and employ Ray and to provide him with confidential information at set out in Section 2(a)(i).

Cayenne also argues that nothing in the arbitration clause indicates that Cayenne agreed to arbitrate any claims it might have against Ray. The arbitration clause provided that

> I agree that any dispute, claim, or controversy concerning my employment or the termination of my employment or any dispute, claim or controversy arising out of or relating to any

---

[18]Id. at 1, § 2(a)(1).

[19]Id. at 1.

> interpretation, construction, performance or breach of this Agreement shall be settled by arbitration....[20]

Cayenne argues that the use of the term "I" and "my" plainly applies to Ray only, and not to Cayenne. Thus, Cayenne insists that the arbitration clause contains no language that indicates an agreement on its part to arbitrate any claims it might have against Ray.

"Ordinary principles of contractual construction apply to the interpretation of arbitration clauses, and the contract containing the arbitration agreement must be read as a whole." United Government Sec. Officers of Amer., Int'l. Union v. Exelon Nuclear Sec., LLC, 24 F. Supp. 3d 460, 465 (E.D. Pa. 2014). Section 9(a) of Ray's employment agreement provided:

> I agree that any dispute, claim, or controversy concerning my employment or the termination of my employment or any dispute, claim or controversy arising out of or relating to any interpretation, construction, performance or breach of this Agreement shall be settled by arbitration....[21]

When the arbitration clause in Section 9(a) is read in the context of Ray's employment agreement as whole, it plainly provides that Ray and Cayenne agreed to arbitrate any claims flowing from Ray's employment. The use of the words "I" and "my" does not render this clause applicable to Ray only. But, to the extent that "the clause is ambiguous, ... the Supreme Court has been clear that 'ambiguities as to the scope of the arbitration

---

[20] Id. at 3, § 9(a).

[21] Id.

clause' must be 'resolved in favor of arbitration.'" Adams v. AT & T Mobility, LLC, Case No. 11–35871, 2013 WL 1633129, at *1 (9th Cir. April 17, 2013 (quoting Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52 (1995)). Moreover, it may be for the arbitrator to decide whether Cayenne's claims against Ray fall within the scope of the arbitration clause. The arbitration clause provides that arbitration will be held "in accordance with the rules then in effect of the American Arbitration Association."[22] "[I]ncorporation of the AAA Rules effectively delegates jurisdictional questions, including arbitrability and validity, to the arbitrator." Zenelaj v. Handybook Inc., 82 F. Supp. 3d 968 (N.D. Cal. 2015).

## Conclusion

"If ... the district court decides that the arbitration agreement is valid and enforceable, then it should stay or dismiss the action pending arbitration proceedings to allow the arbitrator to decide the remaining claims[.]" Nagrampa v. MailCoups, Inc., 469 F.3d 1257, 1276 77 (9th Cir. 2006). Generally, a stay is appropriate but it is within the court's discretion to dismiss a case "if all of the alleged claims are subject to arbitration." Delgadillo v. James McKaone Enters., Inc., Case No. 1:12–cv–1149 AWI MJS, 2012 WL 4027019, at *3 (E.D. Cal. Sept. 12, 2012.) Here, because all of Cayenne's claims against Nash and Ray are subject to arbitration, dismissal is appropriate. Nash's and Ray's motion to

---

[22] Id.

dismiss and to compel arbitration[23] is granted. Cayenne's claims against Nash and Ray are dismissed without prejudice.

DATED at Anchorage, Alaska, this 15th day of September, 2015.

/s/ H. Russel Holland
United States District Judge

---

[23]Docket No. 93.